# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

---

In Re:

JASON L. SCOTT and
GINGER K. SCOTT,

**Debtors.**

**Case No. 05-43474**
**Chapter 13**

---

JASON L. SCOTT and
GINGER K. SCOTT,

**Plaintiffs,**

vs.

COUNTRYWIDE HOME
LOANS, INC., MORTGAGE
ELECTRONIC
REGISTRATION SYSTEMS,
INC., and RECONTRUST
COMPANY, N.A.,

**Defendants.**

**Adversary Proceeding
No. 07-8058**

---

### MEMORANDUM OF DECISION
### RE PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS
---

MEMORANDUM OF DECISION - 1

**APPEARANCES:**

>Paula Brown Sinclair, Twin Falls, Idaho, Attorney for Plaintiffs.

>James Colborn, NEAL & UHL, Boise, Idaho, Attorney for Defendants.

## *Introduction*

In this adversary proceeding, the Plaintiffs, chapter 13[1] debtors Jason L. Scott and Ginger K. Scott, move to dismiss the counterclaims filed against them by Defendants Countrywide Home Loans, Inc., Mortgage Electronic Registration Systems, Inc., and ReconTrust Co., N.A. (collectively, "Defendants").  Docket No. 11.  On August 6, 2007, the Court conducted a hearing concerning Plaintiffs' motion.  After allowing the parties to file supplemental briefs, the issues were taken under advisement.  The Court, having now considered the submissions and arguments of the parties, as well as the applicable law, concludes that Plaintiffs' motion should be granted.

## *Facts and Procedural History*

The following facts appear undisputed from the pleadings and the

---

[1]   All chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, as they existed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (Apr. 20, 2005), because  Debtors' bankruptcy case was commenced on October 14, 2005, prior to BAPCPA's effective date of October 17, 2005.

MEMORANDUM OF DECISION - 2

Court's docket in Plaintiffs' bankruptcy case.[2]

Plaintiffs filed a chapter 13 bankruptcy petition on October 14, 2005. Bk. Docket No. 1. In their asset schedules, Plaintiffs listed their residential real property located at "794 Canyon Rim Road, Twin Falls, Idaho" ("Twin Falls residence"). Bk. Docket No. 1, Schedule A. In their schedules, they indicated the current market value of the Twin Falls residence was $132,000. *Id*. On Schedule D, dealing with secured debts, Plaintiffs listed Defendant Countrywide Home Loans ("Countrywide") as a creditor holding a claim secured by a mortgage on their home in the amount of $166,848.95, with the balance due to Countrywide on that loan of $34,848.95 as unsecured.[3] In addition, Plaintiffs listed another Countrywide loan, this one secured by a second deed of trust on the Twin Falls residence, with a balance due of $20,703.53, indicating that the full amount due was unsecured. [4]

---

[2] Although a copy of the Debtors' bankruptcy petition, schedules and confirmed plan are not a part of the record in the adversary proceeding, under Fed .R. Evid. 201(c), the Court may take judicial notice of its official docket, and under Fed. R. Evid. 801(d)(2), it may consider the statements made in Debtors' schedules as admissions. *In re Schweizer,* 354 B.R. 272, 278 n. 3 (Bankr. D. Idaho 2006); *In re Moore*, 01.4 I.B.C.R. 147, 149 n. 7 (Bankr.D.Idaho 2001).

[3] $132,000 (market value) – $166,848.95 (total loan balance) = ($34,848.95).

[4] Defendants allege that the first and second mortgage loans were made to Debtors together as part of a single loan package in connection with a refinance of Debtors' prior mortgage debt. Docket No. 9, ¶ 3.

MEMORANDUM OF DECISION - 3

In their Amended Chapter 13 Plan filed in their bankruptcy case on November 4, 2005, Plaintiffs proposed to "strip" the second mortgage held by Countrywide.  Bk. Docket No. 18, ¶ 4.2.3.  That plan, including the lien-stripping provision, was confirmed by the Court without objection from Countrywide in an order entered on December 16, 2005.  Bk. Docket No. 26.  While at the motion hearing, counsel for Countrywide conceded that the creditor received timely notice of both Plaintiffs' bankruptcy filing and proposed plan, because Plaintiffs were current on their second mortgage payments, Countrywide elected not to file a proof of claim, and did not seek stay relief, object to Plaintiffs' plan, nor make any sort of other appearance in the bankruptcy case.  Docket No. 9, ¶ 4.

Thereafter, on June 16, 2006, Plaintiffs' counsel allegedly sent a letter to Countrywide reminding it about Plaintiffs' bankruptcy case, and warning it against any efforts to collect its second mortgage from Plaintiffs.  Docket No. 1, Ex. A.  There was evidently no response to this letter.  However, on January 10, 2007, a Notice of Default was issued to Plaintiffs by Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the second deed of trust on the Twin Falls residence.  *Id.*, Ex. B.  On February 5, 2007, a Notice of Trustee's Sale was issued advising that Plaintiffs' home would be sold to satisfy the second mortgage debt.  *Id.*, Ex. C.

MEMORANDUM OF DECISION - 4

In response to these developments, Plaintiffs commenced this adversary proceeding against Countrywide, MERS, and ReconTrust Company, N.A. ("ReconTrust"), a foreclosure agent, on May 9, 2007. Docket No. 1. In their complaint, Plaintiffs allege that Countrywide and the other Defendants had violated the automatic stay in effect in their bankruptcy case by attempting to collect a loan in contravention of the terms of their confirmed chapter 13 plan. They sought money damages from Defendants for the stay violation.

Defendants, in turn, filed a joint answer denying that Plaintiffs are entitled to any relief, and asserted counterclaims against Plaintiffs alleging that they had engaged in fraud and misrepresentation in obtaining confirmation of their plan, and urged that Plaintiffs will be unjustly enriched if they are allowed to strip Countrywide's second mortgage.

### *Analysis and Disposition*

Plaintiffs seek dismissal of Defendants' counterclaim for failure to state a claim upon which relief may be granted pursuant to Rule 7012, which incorporates Fed. R. Civ. P. 12(b)(6). Plaintiffs argue that, pursuant to §§ 1327 and 1330 of the Bankruptcy Code, Defendants' counterclaims for fraud and unjust enrichment amount to a prohibited collateral attack on the terms of their confirmed chapter 13 plan. Plaintiffs also challenge the legal standing of the Defendants

MEMORANDUM OF DECISION - 5

other than Countrywide to assert any counterclaim.

In defense to the motion, and during oral argument, Defendants asserted that Countrywide's due process rights were violated during the plan confirmation process, and therefore, the lien-stripping plan provisions are void and unenforceable against Countrywide and the other Defendants.

The Court first examines the standing issue, followed by an analysis of Defendants' due process claim, concluding with a discussion of the merits of Plaintiffs' motion to dismiss.

## I.  Standing

Plaintiffs argue that Defendants MERS and ReconTrust lack standing to assert a counterclaim in this adversary proceeding.  Specifically, Plaintiffs allege that MERS and ReconTrust are not their creditors, and were not entitled to notice of the filing of Plaintiffs' bankruptcy case or their plan, and thus cannot complain about the effect of those plan provisions here.

In analyzing a motion to dismiss for lack of standing, the Court must treat the material allegations of the counterclaim as true, and must construe those allegations in favor of the complaining party. *Arakaki v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007) (citing *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1080-81 (9th Cir. 1987)).

MEMORANDUM OF DECISION - 6

In considering the allegations of Defendants' counterclaims, as well as the arguments presented at the hearing, the Court agrees with Plaintiffs that ReconTrust lacks standing to prosecute a counterclaim under these facts. Apparently, ReconTrust is a foreclosure agent retained by Countrywide or MERS to enforce the deed of trust only after Plaintiffs allegedly defaulted on the second mortgage debt. Defendants' counsel acknowledged this to be so during the motion hearing. Because ReconTrust is not and was not a creditor of the Plaintiffs, and only became involved with these parties much later, it has no legal standing to assert claims arising out of the confirmation of Plaintiffs' chapter 13 plan. Accordingly, Plaintiffs' motion to dismiss the counterclaim to the extent asserted by ReconTrust is well taken and will be granted.

With respect to MERS, the allegations of the counterclaim are not particularly enlightening as to the basis for its standing – indeed, they appear to be conflicting. For example, in paragraph 2 of the answer, Defendants admit the allegation in Plaintiffs' complaint that MERS "is the named beneficiary of the deed of trust in question." However, in paragraph 3, Defendants also admit that Countrywide "is the beneficiary of the referenced deed of trust."[5]

Assuming the deed of trust signed by Plaintiffs shows MERS to be

---

[5] A copy of the deed of trust is not included in the pleadings or record.

MEMORANDUM OF DECISION - 7

the beneficiary, the Court is perplexed by Plaintiffs' argument that MERS lacks

standing.  On one hand, Plaintiffs argue that because MERS was not a creditor,

was named to serve as trustee in the deed of trust by Countrywide, and was not a

party to the underlying bankruptcy, it has no standing in this adversary proceeding

to complain about the substance of the confirmed plan.  On the other hand,

Plaintiffs contend that MERS' interest as the trust deed beneficiary is so linked to

that of the lender as to render it in privity with Countrywide, and thus notice of the

bankruptcy to Countrywide was sufficient to serve as notice to MERS, and any

binding effect of the plan on one is effective as to the other.  *See Virginia Surety

Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1247 (9th Cir. 1998).  "'Privity' .

. . is a legal conclusion 'designating a person so identified in interest with a party

to former litigation that he represents precisely the same right in respect to the

subject matter involved.'" *Hasso v. Mozsgai (In re La Sierra Financial Services,

Inc.)*, 290 B.R. 718, 729 (9th Cir. BAP 2002) (quoting *United States v. Schimmels

(In re Schimmels)*, 127 F.3d 875, 881 (9th Cir. 1997) (additional citations

omitted)).

Plaintiffs cannot have it both ways.  Plaintiffs concede that

Countrywide, as the lender, has legal standing in this adversary proceeding as a

counterclaimant.  If Plaintiffs are correct, and MERS stands in privity with

MEMORANDUM OF DECISION - 8

Countrywide under the loan contracts, such that notice of the underlying bankruptcy case to one party constituted constructive notice to the other, then surely that same privity confers legal standing upon MERS to assert its rights as beneficiary under the deed of trust in the counterclaim.

Taking the allegations contained in the counterclaims as true, notably that MERS is the beneficiary under the deed of trust in issue, the Court concludes that MERS has alleged a sufficient interest, due to its relationship with Countrywide, to challenge Plaintiffs' conduct in the bankruptcy case, as well as the enforceability of the terms of the confirmed plan, via the counterclaims.  *Id.* ("[a] party in privity is bound in the same way the party is bound.") (citing *Rivet v. Regions Bank of La.,* 522 U.S. 470, 476 (1998)).  Thus, to whatever extent Countrywide is bound by the provisions of the confirmed plan, and whatever rights Countrywide may have to seek revocation of the plan, MERS, as Countrywide's designee to serve as beneficiary under the deed of trust executed by Plaintiffs to secure the Countrywide loan, has equal rights and obligations. Plaintiffs' argument that MERS lacks standing, on this record, has no merit.

## II.  Due Process

In opposition to Plaintiff's motion, Defendants Countrywide and MERS argue that they are not bound by Plaintiffs' confirmed plan because they

MEMORANDUM OF DECISION - 9

did not receive adequate notice of the lien-stripping provisions of Plaintiffs'

proposed plan.  To be precise, Defendants do not contend that they did not receive

notice of Plaintiffs' bankruptcy filing, or of Plaintiffs' plan and the confirmation

hearing, but rather that the *quality* of notice sent to them was deficient.  In

particular, Defendants contend that the structure and verbiage of Plaintiffs'

proposed plan was not legally sufficient to draw their attention to the lien-

stripping provision, and because the plan impacted a property right, their due

process rights were implicated and, ultimately, violated.

   The courts in this circuit and district have held that a valueless lien

may be stripped under a chapter 13 debtor's plan.  *See Zimmer v. PSB Lending*

*Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Lam v. Investors Thrift (In*

*re Lam)*, 211 B.R. 36 (9th Cir. BAP 1997), *appeal dismissed*, 192 F.3d 1309 (9th

Cir. 1999); *In re Millspaugh*, 302 B.R. 90 (Bankr. D. Idaho 2003).  As these cases

instruct, the effect of a lien-strip in this context is to negate a creditor's lien in its

entirety.  It is available only when a debtor can demonstrate the interest of the

creditor is, in fact, completely unsecured.

   This Court has held that an adversary proceeding is not required to

strip a lien; it may be accomplished through the chapter 13 plan confirmation

process.  *In re Millspaugh*, 302 B.R. at 97-98 ("This sort of valuation process is

MEMORANDUM OF DECISION - 10

regularly conducted, in regard to partially secured creditors, through plan

confirmation and plan-related motions.  The Court sees no compelling reason to

require a different procedural vehicle for valuation of an allegedly wholly

unsecured creditor.").  In *Millspaugh*, the Court carefully examined the various

minimum due process requirements to sustain a lien-strip plan provision applied in

the published decisions and ultimately concluded that,

> Consistent with these decisions, and in order to adhere
> to fundamental principles of due process, the Court
> concludes that a debtor attempting to strip off a lien
> under the authority of *Zimmer* must, in the plan and its
> related motions, *make clear and conspicuous the
> proposed treatment of the creditor's claim and the
> factual and legal basis for such treatment.*

*Id*. at 99 (emphasis supplied).

The Amended Chapter 13 Plan at issue in this action contains the

following information on page two:

> This Chapter 13 Plan and Related Motions contain
> language that is different from the standard plan as
> approved by the U.S. Bankruptcy Court, District of
> Idaho.  An asterisk immediately preceding the section
> number designates a modified plan section . . . .

Bk. Docket No. 18.[6]  A perusal of the plan reveals that it contains only one

_____

[6]  Debtors filing for relief under chapter 13 in the District of Idaho are required to use a  "Model Chapter 13 Plan and Related Motions."  L.B.R. 2002.5(e).  Under this rule, if the plan used by the debtor deviates from the "standard provisions," the debtor must so notify creditors in the plan, "and the deviations shall be clearly identified."  The

MEMORANDUM OF DECISION - 11

asterisked provision – the lien-stripping provision.  That provision states:

> **\*4.2.3    Other Treatment of Long Term Secured Claims.**  The claim of Countrywide Home Loans on Account Number 083466215, which may be secured by an interest in Debtors' residence, is junior to the Countrywide Home Loans claim under Account Number 083466223 described in Paragraph 5.1 below. The balance due on the note secured by the first deed of trust exceeds the value of the real property.  Debtors propose to strip the lien claim of Countrywide Home Loans under Account Number 083166215[7], and render that claim unsecured upon confirmation of the Plan.

*Id*. at ¶ *4.2.3, p. 7.

The plan provision in *Millspaugh* contained much of the same information as that included in Plaintiffs' plan.  Both plans identified by name the creditor impacted by the provision, and recited the fact that the value of the creditor's second priority lien was less than the amount owed to the first lienholder.  Both plans succinctly provided that confirmation of the plan was intended to effectively "strip" the lien and render the claim unsecured upon

---

provision of Plaintiffs' plan quoted above adopting the use of an asterisk to highlight plan provisions which deviate from the standard plan provisions represents the Model Plan's method of complying with the local rule's requirement to "clearly identify" such deviations.

[7]  This account number is acknowledged by all parties to be incorrect, and has even been perpetuated in pleadings filed by Defendants.  However, Defendants have not argued that the error caused them any confusion about the lien Plaintiffs intended to strip through confirmation of the plan.  Thus, the error in the account number is insignificant in the Court's opinion.

MEMORANDUM OF DECISION - 12

confirmation.  In *Millspaugh*, the subject language was set forth in uppercase,

italicized letters.  Here, the provision is denoted by an asterisk in a plan which

previously explains the significance of an asterisked provision.  The only

substantive difference between the notice afforded the creditor in *Millspaugh*, and

that given by Plaintiffs to Countrywide here is that the Millspaughs also sent the

creditor a brief which explained the precise relief sought, and the basis underlying

that relief.  Here, no information about the lien-stripping provision other than the

plan was sent to Countrywide.

    While it is arguably a close call, the Court concludes that, as a matter

of law, Countrywide and its privy MERS, were afforded sufficiently clear and

conspicuous notice and information about the proposed treatment of the second

deed of trust lien so as to satisfy the requirements of due process.  Plaintiffs' plan

warns creditors on page two that it contained nonstandard provisions, as compared

to the District's Model Plan, which special provisions would be designated by an

asterisk.  The lien-stripping provision, which refers to Countrywide by name, was

highlighted with such an asterisk.

    In addition, the plan provision contains adequate detail to explain to

a sophisticated lender like Countrywide exactly what the plan proposed

concerning the second mortgage loan, and how confirmation of that plan would

MEMORANDUM OF DECISION - 13

impact that creditor's lien.  The plan also contained loan account numbers for

identification.

In sum, the Court concludes that the proposed treatment of

Countrywide's junior lien in Plaintiffs' plan, *i.e.*, that it is to be "stripped" upon

confirmation, is both clear and conspicuous.  The plan affords Countrywide

adequate notice that its secured rights would be impacted by confirmation, and

that if it objects to such treatment, that it must object to confirmation of the plan.

Countrywide's and MERS' due process rights were not violated.

### III.  Motion to Dismiss

Having concluded that Countrywide and MERS were not denied due

process, and that the terms of Plaintiffs' confirmed plan are enforceable against

them, the question remains whether Countrywide and MERS have stated  adequate

claims for relief in their counterclaims to withstand Plaintiffs' motion to dismiss.

The Court concludes they have not.

A.  Standard Governing Motions to Dismiss

Rule 12(b)(6) provides for dismissal of a complaint, or in this case, a

counterclaim, for failure to state a claim upon which relief may be granted.  In

order to state a claim for fraud, Defendants' counterclaim must state "the

MEMORANDUM OF DECISION - 14

circumstances constituting fraud . . . with particularity." Fed. R. Civ. P. 9(b).[8]

The Supreme Court recently interpreted this rule to require that the allegations in

the complaint must reach above "a speculative level" to that of "render[ing]

[Defendants'] entitlement to relief plausible." *Bell Atlantic v. Twombly*, ___ U.S.

___, 127 S.Ct. 1955, 1965, 1973 n. 14).  The Supreme Court in *Bell Atlantic*

emphasized its holding "do[es] not require heightened fact pleading of specifics,

but only enough facts to state a claim to relief that is plausible on its face." *Id*. at

1974.[9]

　　　　　Dismissal may be based on the lack of a cognizable legal theory or

the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

*v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).  In analyzing whether

to grant a Rule 12(b)(6) motion, the court should keep in mind that dismissal is

disfavored and should be granted only in "extraordinary" cases. *United States v.*

*Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).  Thus, a court may properly

grant a Rule 12(b)(6) motion if it is clear from the face of the complaint and

---

[8]  Fed. R. Civ. P. 9 is made applicable in adversary proceedings by Rule 7009.

[9]  There is some uncertainty whether the language in *Bell Atlantic* was meant to modify the pleading standard in all cases, or only in those that are already required to be plead with particularity.  S*ee Iqbal v. Hasty*, 490 F.3d 143, 155-158 (2nd Cir. 2007).  However, as the counterclaim before the Court raises a fraud claim, which is required to be plead with particularity, the Court need not consider that issue here.

MEMORANDUM OF DECISION - 15

judicially-noticed documents that the plaintiff (here, the counterclaimant) cannot prevail as a matter of law. *Quad-Cities Constr., Inc. v. Advanta Bus. Serv., Corp. (In re Quad-Cities Constr., Inc.)*, 00.4 I.B.C.R. 190, 191 (Bankr. D. Idaho 2000) ("the issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence in support of the claims. It may appear on the face of the pleadings that recovery is very remote and unlikely, but that is not the test.") (quoting *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (additional citations omitted).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

B. The Fraud Counterclaim

Defendants allege in their counterclaim that, at the time Plaintiffs filed their petition and plan, Plaintiffs knew the value of the Twin Falls residence was substantially greater than the $132,000 they listed on Schedule A. Bk. Docket

MEMORANDUM OF DECISION - 16

No. 1.  Defendants allege the Twin Falls residence was undervalued by approximately $120,000.  Docket No. 9, ¶ 9.  Defendants point out that Plaintiffs failed to assign any specific value to the Twin Falls residence in the Amended Chapter 13 Plan, and instead only "vaguely" stated that it was worth less than the amount due on the first mortgage.  *Id*. at ¶ 10.  Defendants contend that Plaintiffs' statements about the value of the home amount to fraud which resulted in Defendants' second mortgage being stripped and thus caused them damage.  Simply put, Defendants argue that Plaintiffs fraudulently obtained confirmation of their plan, and as a result, the lien-stripping provisions in the plan are ineffective.

As required for purposes of this motion to dismiss, the Court assumes that Plaintiffs did indeed knowingly undervalue the Twin Falls residence by $120,000, and in proposing to strip Defendants' mortgage, Plaintiffs engaged in fraud.  Even so, the Court concludes that Defendants can prove no set of facts which will entitle them to the relief they request under these circumstances.

Under § 1327(a), a properly confirmed chapter 13 plan "bind[s] the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  The Ninth Circuit's Bankruptcy Appellate Panel has explained that plan confirmation has res judicata effect, and "res judicata is not limited to

MEMORANDUM OF DECISION - 17

those issues actually known to creditors prior to confirmation.  A Chapter 13 plan

'is res judicata as to all issues that *could have or should have been litigated* at the

confirmation hearing.'" *Duplessis v. Valenti (In re Valenti)*, 310 B.R. 138, 150

(9th Cir. BAP 2004) (emphasis in original); *see also Multnomah County v. Ivory

(In re Ivory)*, 70 F.3d 73, 75 (9th Cir. 1995) ("An order confirming a Chapter 13

plan is res judicata as to all justiciable issues which were or could have been

decided at the confirmation hearing.") (quoting *Anaheim Sav. & Loan Assoc. v.

Evans (In re Evans)*, 30 B.R. 530, 531 (9th Cir. 1983)).

The value of Plaintiffs' house, and whether Defendants' second

mortgage lien was completely unsecured or not, were issues that "could have or

should have been litigated at the confirmation hearing."  Fairly read, Defendants'

counterclaim alleges that Plaintiffs' confirmed chapter 13 plan, which under

§ 1327(a) would otherwise be binding upon Defendants, is unenforceable because

Plaintiffs engaged in fraud in obtaining confirmation.  However, in the Court's

opinion, Defendants face an insurmountable hurdle in prevailing on such an

argument:  Defendants' fraud claim is time-barred.

Section 1330 is specific about the time within which a party may

request the revocation of an order confirming a chapter 13 plan because of the

alleged fraud by a debtor.  That statute provides:

MEMORANDUM OF DECISION - 18

> (a) On request of a party in interest at any time *within 180 days after the date of the entry of an order of confirmation* under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

11 U.S.C. § 1330(a) (emphasis supplied).  This Code provision is strictly construed, even in the case of active concealment of facts.  *See In re Valenti*, 310 B.R. at 141 ("there is a strict 180-day time limit for seeking to revoke confirmation for fraud under Section 1330(a).  This bars the claims raised in Creditors' . . . complaint even if Debtor concealed her alleged misconduct.").  The basis for strict application of the Code's time limit on revocation of confirmation orders is the "strong policy of finality applying res judicata to confirmation orders."  *Id.* at 145 (citing *In re Ivory*, *supra*).  Section 1330 "provides a narrow exception to res judicata and finality, limited in two important ways:  the request for revocation must be made 'within 180 days after the date of the entry of [the Confirmation Order]' and revocation is only authorized 'if such order was procured by fraud.'"  *Id.*   The *Valenti* court explained:

> It does not matter if, as Creditors allege, Debtor concealed any misconduct.  To borrow a phrase from a Ninth Circuit case applying the nearly identical language of Section 1144, the 180-day bar applies to bar revocation even if "the fraud is not discovered until the period has passed."  *Dale C. Eckert Corp. v. Orange Tree Assocs., Ltd. (In re Orange Tree Assocs., Ltd.)*, 961 F.2d 1445, 1447 (9th Cir. 1992) (for

MEMORANDUM OF DECISION - 19

> revocation of Chapter 11 confirmation order under
> § 1144, "strict compliance" with the 180-day period is
> "a prerequisite to relief").

*Id.*

Plaintiffs' Amended Chapter 13 Plan was confirmed by this Court on December 16, 2005. The time within which to seek revocation of that confirmation order pursuant to § 1330 expired on June 14, 2006. Defendants' counterclaim was filed on June 13, 2007, just shy of a year after the deadline, and a year and a half after plan confirmation. Because the § 1330 deadline is strictly applied, it is clear from the face of the counterclaim and judicially-noticed documents that Defendants cannot prevail as a matter of law on their fraud claim.[10]

---

[10] This Court has rejected Defendants' approach before in a case in which the debtor was alleged to have undervalued certain parcels of real estate in his schedules. The creditor failed to timely object to the values stated, but instead later filed a motion in which it sought, among other things, to revoke the confirmation order. The Court declined to do so for a number of reasons. It stated:

> In another case interpreting § 1330, the court denied relief
> when the creditor knew of the allegedly fraudulent acts
> prior to confirmation and failed to timely raise the issue.
> *Bright v. Ritacco (In re Ritacco)*, 598 B.R. 595, 598-99
> (Bankr. D. Or. 1997). The Court's record in this case
> reflects that Mr. Sallaz had notice of the values Debtor
> listed in his schedules well in advance of confirmation.
> Without expressly adopting the holding of *In re Ritacco*,
> the Court notes it would provide yet another reason to deny
> Mr. Sallaz's motion.

*In re Matthews*, 04.2 I.B.C.R. at 58 n. 6.

MEMORANDUM OF DECISION - 20

Plaintiffs' Motion to Dismiss the claim for fraud must therefore be granted.[11]

While Defendants' counterclaim for fraud must be dismissed as time-barred, there are also other grounds justifying its dismissal. Though Defendants argue otherwise, by their own admission, they will be unable to prove the required elements for revocation of the order confirming Plaintiffs' plan on the basis of fraud. As this Court has previously explained:

> To revoke a Chapter 13 confirmation order on the basis of fraud, the creditor must prove that: (1) the debtor made a representation; (2) the debtor knew the representation was false when it was made; (3) the representation was made with the intent to deceive; (4) *the creditor relied on the representation;* and (5) the creditor was damaged as a result of the representation.

*In re Matthews*, 04.2 I.B.C.R. 55, 58 (Bankr. D. Idaho 2004) (citing *Credit Gen. Ins. Co. v. Briscoe (In re Briscoe)*, 90 I.B.C.R. 57, 58-59 (Bankr. D. Idaho 1990)) (emphasis supplied).

Based upon Defendants' own pleadings, they cannot prove they relied upon Plaintiffs' allegedly fraudulent statements regarding the value of the

---

[11] Although not argued here, the *Valenti* court also concluded that it was "impermissible" to utilize the bankruptcy court's general powers under § 105(a) to "evade the plain language of Section 1330(a)[;]" that § 1307(c) cannot be invoked to bypass the 180-day time limit; and that Rule 9024, which generally incorporates Fed. R. Civ. P. 60(b), is also not a basis for a tardy request for revocation of a confirmation order due to the self-limiting language of the Rule incorporating the time limit set forth in § 1330. *In re Valenti,* 310 B.R. at 145-47.

MEMORANDUM OF DECISION - 21

Twin Falls residence in this case. Instead, Defendants' counterclaim alleges that:

> At the time of petitioning for [bankruptcy] relief, and
> through the time of Confirmation of their Plan,
> [Plaintiffs] were current on their payments on the
> Second Mortgage and, *as a result*, [Defendants] filed
> no Motion for Relief from Section 362 Automatic
> Stay, Proof of Claim, or otherwise appeared in the
> matter.

Docket No. 9, ¶ 4 (emphasis supplied). This allegation plainly shows that it was

Plaintiffs' continued payments on the second mortgage loan, not their alleged

misrepresentations concerning the value of the house, that caused Defendants to

fail to act to protect their lien interests in Plaintiffs' bankruptcy case. Absent an

allegation that Defendants relied upon Plaintiffs' house value estimates,

Defendants cannot prove fraud.

C.  Unjust Enrichment Claim

Defendants also assert a claim against Plaintiffs for unjust

enrichment, arguing that to allow Plaintiffs to retain the value of the second

mortgage but not require repayment to Defendants is inequitable, something the

Court is urged to prevent. As an equitable doctrine, unjust enrichment is applied

where a party to a transaction has received a benefit which would be inequitable

for it to retain under the circumstances without compensating the other party for

the value of that benefit. *In re Smith Oil, Inc.*, 96.4 I.B.C.R. 140, 140-41 (Bankr.

MEMORANDUM OF DECISION - 22

D. Idaho 1996); *Christiansen v. Fitzgerald (In re Agro Technology, Inc.)*, 95

I.B.C.R. 121, 123-24 (Bankr. D. Idaho 1995).  However, because it is a claim

founded in equity, not in the Bankruptcy Code, it cannot be invoked in the face of

a contrary applicable provision of the Code.  *See, e.g., Marrama v. Citizens Bank

of Massachusetts*, ___ U.S. ___, 127 S.Ct. 1105, 1116 (2007) ("a bankruptcy

court's general and equitable powers 'must and can only be exercised within the

confines of the Bankruptcy Code . . . .'"  A bankruptcy court "'is guided by

equitable doctrines and principles except in so far as they are inconsistent with the

Act.'").  *Id.* (citations omitted).

   To strip Defendants' totally unsecured lien, Plaintiffs rely upon

§ 506.  Section 506(a) provides in pertinent part that:

> *An allowed claim of a creditor secured by a lien on
> property in which the estate has an interest*, . . . is a
> secured claim to the extent of the value of such
> creditor's interest in the estate's interest in such
> property . . .  and *is an unsecured claim to the extent
> that the value of such creditor's interest . . .  is less
> than the amount of such allowed claim.  Such value
> shall be determined* in light of the purpose of the
> valuation and of the proposed disposition or use of
> such property, and *in conjunction with any hearing* on
> such disposition or use or *on a plan affecting such
> creditor's interest.*

11 U.S.C. 506(a) (emphasis supplied).  *See also Nobelman v. American Sav. Bank*,

508 U.S. 324, 328 (1993).  And subject to certain exceptions not applicable here, §

MEMORANDUM OF DECISION - 23

506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."  In a chapter 13 case, § 1327(c) instructs that, "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the property [vested in the debtor upon confirmation] is free and clear of any claim or interest of any creditor provided for by the plan."

The combined effect of these Code provisions is to allow a creditor's completely unsecured lien to be stripped by a confirmed chapter 13 plan.  Because the Code expressly allows unsecured liens to be stripped under certain circumstances, this Court may not prevent that result by applying generic equitable principles to aid a particular creditor, Countrywide.  Arguably, any time a debtor is allowed to strip a lien under the Code, the debtor receives a benefit to the creditor's detriment.  Indeed, through the adjustment of creditors' otherwise enforceable rights, Congress provides the means for a debtor to enjoy the debt relief embodied by the Code.  And in doing so, Congress has determined that such a result is not "unjust."  Allowing Defendants to invoke state law equitable rules to prevent Plaintiffs from avoiding a valueless lien under § 506 would therefore frustrate a fundamental purpose of the Code.

Moreover, Defendants' equitable claim cannot succeed based upon the undisputed facts of this case.  Defendants, who admit they received proper

MEMORANDUM OF DECISION - 24

notice of the filing of Plaintiffs' bankruptcy case as well as the provisions of

Plaintiffs' proposed plan, elected to sit on their rights.  The valuation of the Twin

Falls residence was listed at $132,000 in Plaintiffs' schedules.  Bk. Docket No. 21;

25.  If Defendants believed that value to be some $120,000 below what it should

have been, and believed that the second deed of trust was at least partially secured,

then that issue could and should have been litigated at the confirmation hearing.

Countrywide is presumably a savvy mortgage lender with extensive

experience in bankruptcy cases.  It is an overly ambitious position for Defendants

to argue that the consequences of confirmation of Plaintiffs' plan – loss of the

unsecured lien – was the result of Plaintiffs' inequitable conduct, rather than their

own inaction.  Therefore, Defendants' claim for unjust enrichment must also be

dismissed.

### *Conclusion*

The Court concludes that Defendant ReconTrust lacks standing to

assert a counterclaim against Plaintiffs in this action.  Furthermore, because the

Defendants' fraud counterclaim was filed almost one year after the deadline in

which to seek revocation of the order confirming Plaintiffs' plan under § 1330 had

expired, it is untimely and must be dismissed.  Finally, Defendants' claims for

unjust enrichment under state law are barred by express provisions of the

MEMORANDUM OF DECISION - 25

Bankruptcy Code authorizing the stripping of their lien.  Moreover, the equities

simply do not favor Defendants under the facts in this record.

Plaintiffs' motion to dismiss the counterclaims will be granted.  A

separate order will be issued.

Dated: September 4, 2007

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 26